CASE 54—ACTION TO ABROGATE AN AGREEMENT OF ARBITRATION AND
ALL PROCEEDINGS THEREUNDER AND TO RECOVER POSSESSION OF
LAND AND FOR RENTS AND INTEREST—Sept. 20.

# Bunnell, &c. v. Bunnell.

APPEAL FROM HART CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANTS APPEAL. REVERSED.

DEEDS—DELIVERY—ACCEPTANCE—ARBITRATION AND AWARD—COMPRO-
MISE AS TO CONTROVERSY AS TO INFANTS' LAND—OPENING OF
JUDGMENT AGAINST INFANT—RES ADJUDICATA—EQUITY.

Held: 1. Where the grantor has executed and acknowledged a deed,
and caused it to be recorded in the proper office, a rebuttable
presumption arises that the deed was delivered on the day of
its date; but such facts raise no presumption of an accept-
ance by the grantee, save where a clearly beneficial interest is
conferred.

2. If the grantor intends the execution of the deed as a delivery,
and this is known to and understood by the grantee, and
they treat the estate as having passed thereby, the deed will
have that effect, though it be left in the possession of the
grantor.

3. A father executed deeds conveying to his two sons, W. and C.,
all his property, real and personal, and assigned to them cer-
tain notes. The grantor had the deeds recorded, and declared
repeatedly that he had given all his property to his boys, and
acquiesced in W.'s claim of ownership. W. had possession of
the notes, and persons who wished to borrow money were
referred by the father to him. The parties occupied the same
house as one family, and W. died there. After his death, the
deeds and notes were found in possession of the grantor, with
whom C. appears in sympathy in a controversy between the
grantor and the infant child of W. as to the title to the prop-
erty. Held, that there was both a delivery and aceptance of
the deeds and assignments of the notes.

4. An agreement purporting to be an agreement to arbitrate a con-
troversy as to the title to real and personal property, in which
an infant heir was represented by her statutory guardian and
by her mother as next friend, is not binding on the infant,
as the agreement in fact surrendered the infant's title to the
property, and provided for its division by the arbitrators among
persons who had no semblance of claim thereto.

Bunnell, &c. v. Bunnell.

5. A controversy as to the title to property, in order to constitute a consideration for a compromise or a family settlement must be a real one, and the question must be one about which well-informed lawyers and judges might easily differ.

6 General Statutes, c. 80, art. 2, providing that, if a guardian of an infant shall believe that he can save the estate or advance the interest of the ward by a settlement of a controversy concerning the lands of such infant by compromise of the matter in suit, he shall have power to do so "with the approbation of the court," superseded the common law, as this statute must be assumed to embrace all the law of the State on that subject; and a compromise of such a controversy by the guardian while the statute was in force, without the approbation of the court, was void.

7. An order that a pending action as to the matter in controversy be "dismissed settled" is not such "approbation of the court" as is required to give validity to the settlement, as it does not appear that the terms of the settlement were ever submitted to the court for its approval.

8. Where an infant seeks to open a judgment for an error not appearing on the face of the record, as authorized by Civil Code Practice, section 518, the judgment sought to be opened can not be made the basis of a plea of *res adjudicata*.

9. The maxim that "they who seek equity must do equity" applies to all litigants alike, and what would have been required of an adult litigant as his own act, the court will impose on an infant as a condition of its action in her behalf.

10. Where a father conveyed all his property to his two sons, he and his wife, the mother of grantees, remaining in possession, were entitled in good conscience to a reasonable support upon and out of the proceeds of that property as long as they lived, and therefore an infant heir of one of the grantees, who seeks by an equitable action to set aside a settlement of a controversy with the grandfather as to the title to the property, is not, though granted the relief sought, entitled to rents during the grandfather's life, and, so long as his widow survives, her comfortable support must be a charge on the land, to be borne equally by the part of each grantee, while the value of any permanent improvements made upon plaintiff's portion since her father's death must, to the extent the value of the land has been increased thereby, be set o ffagainst rents accruing since the grandfather's death.

LEWIS McQUOWN, W. J. MACEY AND B. W. BRADBURN, FOR APPELLANTS.

JOHN E. DuBOSE, EDWARD W. HINES AND H. W. CURLE, FOR
APPELLEES. (No briefs.)

OPINION OF THE COURT BY JUDGE O'REAR—REVERSING. .

On the 18th day of August, 1880, J. H. Bunnell conveyed
to his sons, W. E. Bunnell and appellant Charles R. Bun-
nell, all his lands in Hart county, Ky., in severalty, for
their lives, with remainder to their bodily heirs, reserving
to himself and wife, appellant Martha A. Bunnell, respec-
tivly, a life estate therein. At this time both his sons
named were living with him, and were unmarried; Charles
R. being a minor. William E. thereafter married appellee
Minnie R. Price (then Minnie R. Munford). On August 19,
1884, after the marriage, and directly after the birth of
appellee, Lillian Bunnell, the first-born and only issue of
William E. and Minnie R. Bunnell, J. H. Bunnell and wife
executed another deed conveying their life estate in the
lands above mentioned to the sons of William E. and
Charles R. The consideration for these deeds was love
and affection. When J. H. Bunnell, with his wife, signed
the deeds, they were left by the grantors with the county
clerk for record, and were recorded. On the date of the
last deed, J. H. Bunnell, for the same consideration, pre-
sumably, assigned to the sons named all his cash notes,
amounting to about $7,000, by writing on the back of each
note in the usual form. It is alleged by the appellees that
he also gave and delivered to the sons named all his other
personal property, stock, furniture, etc. The parties con-
tinued to reside at the old homestead, constituting but one
family. About one year after the execution of the last
deed, William E. Bunnell died intestate. His widow, with
the child, stopped at her father's who lived a short dis-

tance from the Bunnell home, after the funeral.   Upon the
advice of her father, W. B. Craddock was appointed ad-
ministrator of the estate of the decedent, and Joel T.
Price as the guardian of the child.   The old man, J. H.
Bunnell, was of eccentric, whimsical disposition; a nervous
dyspeptic, his physician testified.   A son-in-law, by the
name of Brownlee, who seems to have incurred the deep-
seated dislike of J. H. Bunnell, sent word to his father-in-
law that the probable result of his confiding generosity
would be that he would be turned out of house and home
by the strangers appointed over the estate of his deceased
son.   The fears of the old man were evidently worked
upon to a considerable extent, for he so forgot his an-
tipathy to Brownlee as to send for him, and to make him
a confidential agent in employing counsel, with a view to
saving the property from the administrator and guardian.
As a result of Brownlee's efforts and the legal advice he
procured, J. H. Bunnell declined to surrender to William
E. Bunnell's representatives any of the property named.
Actions were then instituted by the administrator, join-
ing the infant and her mother, as next friend, and by the
guardian, seeking to recover respectively their proportions
of the property involved in the conveyance and assign-
ments first referred to.   After the suits were brought,
Brownlee appeared again on the scene,—he says, at the in-
stance of J. H. Bunnell; but whether so, or as self-con-
stituted emissary to the widow, may not be satisfactorily
shown.   He told her that, because the deeds and notes
"had never been delivered" by J. H. Bunnell, his title to
the lands and money had not passed, and that she and her
child would lose everything; besides, J. H. Bunnell,
angered by her action, was going to sue her father on
some notes owing by him, and included in those thought

to have been assigned; that he would be sold out and ruined; and, furthermore, that J. H. Bunnell would spend every dollar of the estate before he would yield. After consultation with her father and attorney, W. B. Martin, she yielded to the suggestion of Brownlee to arbitrate the matters in litigation. Brownlee testifies that he reported these conversations to J. H. Bunnell.

The agreement of arbitration signed by the parties is as follows: "Whereas, a controversy exists between the undersigned, W. B. Craddock, administrator of W. E. Bunnell, deceased, Minnie R. Bunnell, widow of said W. E. Bunnell, Lillian Bunnell, the only child and heir at law of said W. E Bunnell, deceased, and Joel T. Price, guardian for said Lillian Bunnell, on the one side, and J. H. Bunnell and C. R. Bunnell on the other side; and whereas, the said W. B. Craddock, administrator as aforesaid, Minnie R. Bunnell, in her own right and as next friend of said Lillian Bunnell, on the 27th day of October, 1885, filed their suit in equity in the Hart circuit court against the said J. H. Bunnell and C. R. Bunnell, wherein the said plaintiffs seek to recover of the defendants therein, certain personal property, notes and money, and an interest in a tract of land therein described, containing about 45 acres, on which Luther Akin now resides in Hart county, Ky.; and whereas, on the 7th day of November, 1885, the said Minnie R. Bunnell and Lillian Bunnell, by Joel T. Price, her guardian, also filed another suit in the Hart circuit court against the said J. H. Bunnell and C. R. Bunnell, in which they seek to recover of the said J. H. Bunnell a certain tract of land situated in Hart county, Ky., on which the said J. H. Bunnell now lives, which lies north and east of a dividing line running through a tract whereon said J. H. Bunnell now lives, commencing on a limestone in J. H.

Bunnell's and Harriet Bunnell's line; thence with the me-
anders of a stone fence N., 25 W., 23 1-5 poles, to a lime-
stone; thence N., 40 E., 33¼ poles, to a limestone and post
oak pointers; thence N., 21 W., 22 7-20 poles, to a limestone
and post oak pointers; thence W., 24 poles, to a lime-
stone; thence N., 54 W., 6 1-5 poles, to a limestone; thence
N., 46 W., 14 poles, to a limestone; thence N., 4 W., 22
poles to a limestone; thence N., 67 W., 32 9-10 poles to a
limestone post oak pointer; thence S., 60 W., 23 7-10 poles
to a limestone; thence S., 59 W., 30 11-20 poles to a lime-
stone in J. H. Bunnell's and J. H. Moss' line; and whereas,
said parties are willing and anxious to have said contro-
versy concerning the title and ownership of the said real
and personal property settled and determined without fur-
ther litigation, the said J. H. Bunnell and C. R. Bunnell
denying the right and title of the plaintiffs in and to the
said property. Now, therefore, the said parties aforesaid,
the said Lillian Bunnell acting through Joel T. Price, her
statutory guardian, and Minnie R. Bunnell, her next friend,
and each of the others acting for himself, do now agree
that the said matter of difference herein before referred to
be submitted to the arbitration of W. B. Craddock, Joel T.
Price, H. C. Martin, and Lewis McQuown, who we agree
may fully settle and determine the said matters and dis-
pute, and bind ourselves to abide by their award; and in
settling the said controversy the said arbitrators are to
divide and distribute the whole estate now owned and pos-
sessed by the said J. H. Bunnell, real and personal, equally
between the following persons, to wit:     Lillian Bunnell
and her mother, Minnie R. Bunnell, the widow of W. E.
Bunnell, deceased, to take one share in right of the said W.
E. Bunnell; Mary E. Brownlee, wife of W. D. Brownlee, an-
other share; James C. Woodward, William C. Woodward,

Samuel Lee Woodward, and George Henry Woodward, only children and heirs at law of Georgianna Woodward, deceased another share; Eliza J. Woodward, wife of H. P. Woodward, another share, and another share to C. R. Bunnell. But before the said arbitrators shall proceed to divide and distribute the said estate of J. H. Bunnell, they may first set apart to the said J. H. Bunnell and Martha Ann Bunnell, his wife, who unite in this agreement, out of said estate, whatever property, real and personal, the said arbitrators shall deem just and proper for the said J. H. Bunnell and his wife's support and maintenance during their said lives, but whatever shall be allotted them is to be the property of J. H. Bunnell absolutely. In making the distribution of said estate of J. H. Bunnell the arbitrators shall proceed upon the basis that the deed claimed to have been made by J. H. Bunnell to his sons, W. E. Bunnell and C. R. Bunnell, under which the plaintiffs in said suits assert the title to the lands referred to in the petition in said cases, are each void and inoperative; and said arbitrators shall also take into consideration each and all advancements made to any of the children or grandchildren of the said J. H. Bunnell by him in money or property, and charge each of the said children with what the arbitrators may deem just and proper under all these circumstances; and said arbitrators shall also allow to the widow and child of W. E. Bunnell whatever they may deem just and proper out of said estate on account of labor or services by W. E. Bunnell performed for the said J. H. Bunnell since he has arrived at the age of 21 years. The said J. H. Bunnell, for the purpose of enabling said arbitrator to act, shall submit an inventory of his estate, real and personal, and the same shall then be divided as

aforesaid, and the portion allotted to each child desig-
nated; the said Lillian and Minnie to take such parts of
the share to be allotted to them as by law they would be
entitled to, and as if W. E. Bunnell had died intestate
seized and possessed of the same. In making the divi-
sions of the estate aforesaid the arbitrators may allot
lands, notes, money, or personalty, either alone or both
together, to any or all of the said children. If the said
arbitrators shall disagree, they may call in an associate
with them,—some other person, who shall act with them
as arbitrators, and shall have all the power and authority
named in this agreement. The arbitrators are also to
proceed upon the basis that the notes now in possession
of J. H. Bunnell, payable to or assigned to C. R. Bunnell
and W. E. Bunnell, or either of them, shall be considered
as part of the estate of J. H. Bunnell for distribution. H.
P. Woodward and Sliza J. Woodward, his wife, W. D.
Brownlee and Mary E. Brownlee, his wife, and C. R. Bun-
nell, each unite in this agreement, and consent to accept
the parts of said estate that may be allotted to each of
them in full satisfaction of their respective shares in the
estate of said J. H. Bunnell. This Dec. 4th, 1885. J.
H. Bunnell. C. R. Bunnell. Minnie R. Bunnell. W. B.
Craddock, Adm'r of W. E. Bunnell, deceased. Joel T.
Price, guardian for Lillian Bunnell. Eliza J. Woodward.
H. P. Woodward. Mary E. Brownlee. W. D. Brownlee.
Martha Ann X Bunnell. Attest: Lewis McQuown."
her / mark

Under this paper the persons named therein as arbitra-
tors, being then at the residence of J. H. Bunnell, made a
list of the personal property exhibited by him, adding to
it the value of the lands, as follows:

(1) We find the land belonging to J. H. Bunnell worth
as follows:

The  forty-five  acres......................  $ 1,000 00

"    180  acres............................     5,400 00

Total land .........................  $ 6,400 00

Cash notes ..............................     6,086 73

The other personal estate................     1,467 00

Total  ............................  $13,953 73

After charging the children named in the above agree-
ment with certain sums reported to have been advanced
to them by J. H. Bunnell (W. E. Bunnell having received
nothing on that account), putting the estate into hotch-
pot, and after deducting $3,000 set apart to J. H. Bunnell,
they divided the remainder among all his children, treat-
ing appellee, Lillian and her mother as the representatives
of William E., deceased, and awarding them $3,085.74, plus
$500, allowed "on account of the services of W. E. Bunnell
since he was 21 years of age." Thereupon, the sum just
stated having been paid to Lillian's guardian, and to Minnie
R. Bunnell (to the former, it is stated in appellant's an-
swer, $1,805.67), the suits instituted in the Hart circuit
court to recover the whole of William E.'s interest (one-
half in value) of the estate, now appraised by the arbitra-
tors at $13,953.73, are "dismissed settled," by orders to
that effect entered of record. J. H. Bunnell has since died
testate, giving all his property to appellant, Charles R.
Bunnell, charged with the support of his mother. Lillian
Bunnell, by her guardian, instituted this action in the
Hart circuit court for a new trial of the actions first above
named, and which had been ordered to be dismissed set-
tled, and to abrogate the agreement of arbitration and all

proceedings under it, to recover possession of the property conveyed to her father by the proceedings dated August, 1880, and August, 1884, and for rents and interest. The circuit court granted her the relief prayed for, referring the cause to the master to ascertain the extent that appellants, by lasting improvements erected, had enhanced the value of William E.'s land, and to ascertain the value of rents of same.

The record discloses but little controversy of fact. First, it is insisted by appellants that the deeds and notes were never delivered by J. H. Bunnell, and therefore the deeds and assignments were ineffectual to pass his title. It will be seen by what follows that even this issue becomes one of law more than of fact, because there is little or no conflict of proof as to the circumstances attending the execution of the deeds and assignment of the notes. Next, it is the contention of appellants that the arbitration and award by the guardian, mother, and next friend on the one part, and J. H. Bunnell and C. R. Bunnell on the other, are good in law to bind the infant's estate; or, if not good as a common law arbitration that as a family settlement and compromise of a doubtful claim it will be upheld. Then it is earnestly argued by appellant that the orders dismissing the cases "settled" are *res adjudicata*, and are so pleaded in bar. Finally, the equities of appellants, as the real representatives of J. H. Bunnell, and, in any event, their right to be restored to the *status quo* if the matter is reopened it is claimed by appellants, would leave the parties substantially where they were placed by the award of the arbitrators.

1. It becomes necessary to determine first what estate, if any, William E. Bunnell took in the lands and notes

by the conveyances referred to, as the solution of that question will largely control the others raised.   That the deeds were executed by the signatures and due acknowledgments. of J. H. Bunnell and wife, and were properly recorded by his direction, is not denied.   But it is claimed that, notwithstanding this, J. H. Bunnell continued to hold the deeds, and never "delivered" them to the grantees. What, in law, is a sufficient delivery of such an instrument?   In McConnell v. Brown, Litt. Sel. Cas., 466, this court held: "A deed must take effect from its delivery, and the delivery is always presumed to have been made on the day of the date of the deed. It may, indeed, be averred and proved to have been on a different day; but the natural as well as legal presumption is that it was on the same day, and that presumption stands until the contrary is proved." And in Ford v. Gregory's Heirs, 10 B. Mon., 180, it was said:   "The delivery of a deed is always presumed to have been made on the day of its date, and its subsequent acknowledgment does not change this presumption, but the delivery may be proved to have occurred at a different time. As, however, a delivery is necessary to the validity and complete execution of a deed, it must have been made before the deed can be acknowledged.   McConnell v. Brown, 6 Litt. Sel. Cas., 465; Speed v. Brooks, 7 J. J. Marsh., 120. But the law does not require the clerk to ascertain or to certify the time of the delivery, and, as the acknowledgment is only evidence of an antecedent delivery, and the date of the deed is only *prima facie* evidence of the time, other evidence is admissible to prove the time when the delivery was actually made."   In Alexander v. De Kermel, 81 Ky., 356, after commenting on the two opinions quoted from above, the court, by Chief Justice Hargis, said:   "The acknowledgment is a fact which may be proven to show

delivery, but, standing alone, it does not establish a presumption of delivery, and for many good reasons it ought not to do so. It only requires the act of the grantor to make the acknowledgment, and it would be dangerous policy to allow such weight to an act of his own as to make it *prima facie* evidence of the important fact of delivery, which requires the concurrence of the grantee." Delivery is the act finally that divests the grantor of title, and acceptance the concurring act that invests the grantee. One may be established by entirely different proof, and, indeed, to have occurred on a different occasion, from the other. Upon consideration of these cases, 'we are inclined to adhere to the doctrine that, when the grantor has executed a deed by signing it, completely acknowledging it, and causing it to be lodged for record, and recorded in the proper office of registry, under the authority of Ford v. Gregory's Heirs and McConnell v. Brown, supra, a *prima facie* case is made, or presumption is raised, that he has delivered the instrument on the day of its date; this presumption, of course, subject to be rebutted by competent proof of either a nondelivery in fact, or of a delivery at another time than the date of the instrument. Such facts, however, raise no presumption of an acceptance by the grantee (Owings v. Tucker, 90 Ky., 297 (12,R., 222), 13 S. W., 1078), save where a clearly beneficial interest is conferred. In Davis v. Garrett (Tenn. Sup.), 18 S. W., 113, Judge Lurton, speaking for that court said: "The latest case on the subject is that of Swiney v. Swiney, 14 Lea., 316. There the court reaffirm the doctrine of McEwen v. Troost, 1 Sneed, 186, and Thompson v. Jones, 1 Head, 576, and hold that, where the grantor causes the actual registration of the deed, it constitutes a *prima facie* case of delivery. The

act of registration, upon the direction of the grantor, is highly significant of his purpose to give effect to his deed. He has thereby put it beyond his power to recall the instrument from the public records, and gives creditors and purchaser's notice of the state of the title. It ought to require strong circumstances to rebut the presumption of delivery arising from such conduct." Also Sweetland v. Buell, 164 N. Y., 541 (79 Am. Rep., 676), 58 N. E. 663; Horn v. Broyles (Tenn. Ch. App.) 62 S. W., 297. To overcome this presumption of delivery, appellants urge the fact that the deeds and notes are found in the possession of J. H. Bunnell. It has already been stated that the parties occupied the same house, and as one family. William E. Bunnell died there, and his widow and babe were absent thereafter from the place. Charles R. appears as in sympathy with his father. Thus the fact of actual custody of the papers at the institution of the original suits loses much of its natural weight, and might be easily explained in full accord with the presumption of previous delivery.

So far we have considered this question as if an actual manual delivery of the deeds was necessary. But such is not the law. No particular form of procedure is required to effect a delivery. It is not essential that the paper be actually transferred. If the grantor, when executing it, intends it as a delivery, and this is known to and understood by the grantee, and they treat the estate as having actually passed thereby, it will have that effect, though the instrument be left in the possession of the bargainor. Washb. Real Prop., 261; Cecil v. Beaver, 28 Iowa, 241, 4 Am. Rep. 174; Tobin v. Bass, 85 Mo., 654, 55 Am. Rep., 392; Ward v. Small, 90 Ky., 198 (12 R., 58), 13 S. W., 1070; Gould v. Day, 94 U. S., 405, 24 L. Ed., 232. Delivery may be shown by acts without words, or words without acts, or by both

Bunnell, &c. v. Bunnell.

combined. Hughes v. Easton, 4 J. J. Marsh, 573, 20 Am.
Dec., 230; Shoptaw v. Ridgeway (22 R., 1495) 60 S. W., 723;
Martin v. Bates (20 R., 1798) 50 S. W., 38; Ward v. Small,
supra. In addition to the circumstances related above, the
following were shown by the evidence: The grantor, J. H.
Bunnell, after the execution of the deeds, appears to have
told as many as ten different persons, and at numerous
times, both during the lifetime of his son and since his
death, that he had given the land (and all his other proper-
ty) to his boys; that he was not worth one dollar. Some of
these conversations were in the presence of his son William
E., and one of them on the day the last deed was executed,
and after it had been left for record. By six witnesses it
it shown that the grantee, William E. Bunnell, after the
execution of these deeds and assignments, claimed the
property, and by some of them that he asserted acts of
ownership over it. By some of the witnesses it was shown
that this claim and authority by William E. was in the
presence of his father, the latter acquiescing without pro-
test or other negative sign. It was shown by Mrs. Price's
deposition that William E. had the actual possession of
the notes, and by the deposition of J. M. Leach that when
he applied to J. H. Bunnell for a loan, he was referred to
William E., and that he borrowed the money from William
E., executing the note to him. Further, some of the notes
inventoried at the arbitration were, on their face, pay-
able to William E. and C. R. Bunnell. There was no rele-
vant evidence to offset the foregoing. Charles R. Bunnell,
the other grantee in the deeds and assignments, and a de-
fendant to these actions, failed to testify. In the light of
the authorities cited and reviewed, and upon the facts
stated, we find, that there was both a delivery and an ac-
ceptance of the conveyances and assignments, and that

the title had passed to William E. Bunnell for the land
described in the deeds as conveyed to him, and for one-
half of the other personal property during his lifetime.
This being established, there would appear nothing to ar-
bitrate when the agreement was signed. Nor was there
in fact an arbitration. At the outset the only matter that
could possibly have been in issue, viz., had there been a
passing of this title? was surrendered on the greement by
the infant's representatives, and the so-called "arbitrators"
were empowered to divide her property among a number of
persons, many of whom had no semblance of claim upon
it, and were not parties to the suits. It possessed none
of the features of an arbitration save the name.

2. Nor was it binding upon the infant as a compromise
of a doubtful claim, or family settlement. "Agree with
thine adversary quickly whilst thou art in the way with
him," is a course favored by the courts. So compromises
are encouraged. But there must be in reality a contro-
versy, and a basis for it, before it can form the consider-
ation of such a settlement. Necessarily, at last, the right,
and therefore the law, must be on one side or the other
of the controversy, and it would not do to say that the
doubtful case must be one concerning which no judicial in-
terpretation has been applied. But it must be one about
which well informed lawyers and judges may easily differ,
and about which the parties themselves differ. Under the
facts shown in this case, it may be doubted whether there
was a basis for such a controversy in fact as would satis-
fy the rule. We are relieved, however, from pursuing that
investigation further by the fact that in this State the sub-
ject of compromises of infants' property interests has
been brought under legislative direction. Article 2, c. 80,
General Statutes (then in force), provided: 'If a guard-

ian of an infant, or a committee of an idiot or lunatic, shall believe that he can save the estate or advance the inter-est of the ward, idiot or lunatic, by a settlement, in whole or in part, of a controversy concerning the lands of such in-fant, idiot or lunatic, by compromise of the matter in suit, he shall have power to do so with the approbation of the court; and all bonds, agreements, sales and conveyances, by him executed with approbation of the court, in further-ance or execution of such compromise, shall bind the in-fant, idiot, or lunatic, and their estate; and the convey-ances so made shall pass the estate of the idiot, lunatic, or infant." It can not be said that the permission of the court was obtained before this agreement was entered into on behalf of the infant by her guardian, nor that its terms were ever submitted to the court for its approval, or that it did approve them. The foregoing statute has not been heretofore construed by this court, so far as we are able to find. In Manion v. Railway Co., 99 Ky., 504 (18 R. 352) 36 S. W., 530, in which the statute was invoked to defeat a compromise out of court by a guardian of his ward's cause of action for personal injury, the court considered that it was not then necessary to construe the statute further than to determine that it did not embrace claims for dam-ages for personal injuries of the infant. The statute, how-ever, in express terms prohibits the compromise by the guardian of controversies concerning the ward's lands, ex-cept under the approving inspection of the court. What-ever may have been the common-law right of a guardian in such premises, it is superseded by the legislative act, which must be assumed now to embrace all the law of this State on that particular subject. Broaddus v. Broaddus, 10 Bush, 299; Hayes v. Insurance Co. (Ill. Sup.) 18 N. E., 322, 1 L. R. A., 307. Not having the approbation of the court, the attempted compromise by the guardian was void.

3. The plea of *res adjudicata* can not avail appellant, for this suit is brought for the express purpose of setting aside those judgments and procuring a new trial of those actions. Had appellee ignored the judgments, and sought a recovery independent of the original actions in which they were rendered, the plea would probably have been good. But here is an infant, seeking to open up a judgment, and for a new trial under section 518, subsec. 8, Civ. Code Prac., allowing a new trial of an action "for errors in a judgment, shown by an infant within twelve months after the arriving at full age." The error in the judgment not appearing on the face of the record, it could be presented only in the manner done in this case. Were the plea of *res adjudicata* applicable in bar, it would defeat the very purpose of the provision of the Code, supra.

4. This suit was brought in equity, and, considering its nature and scope, properly so. It showed the chancellor where, whatever may have been the intention of the responsible actors in the various proceedings, an injustice was done to the infant in reference to her legal rights in her property. It invoked the aid of the chancellor in righting that wrong, and to that end appealed to his conscience. Were the plaintiff an adult, the chancellor could withhold all relief till the plaintiff offered to do complete equity to his adversary, without reference to the rules of law, or agree to take the relief sought subject to such equitable condition as the court might impose. Here the plaintiff is an infant, incapable alike of disposing of her property as well as making any valid agreement with reference thereto. However the tender years of this litigant may move the court to a protecting care of her property rights, they will not be allowed to prevail at the expense of the equities of the other parties; and what would have

been required of an adult litigant as his own act, the court will impose on the infant as a condition of its action in her behalf. "They who seek equity must do equity," applies to all litigants alike. Whatever may have been the legal rights of J. H. Bunnell and his wife, and their sons, William E. and C. R., with reference to this property, for the boys to have held it, and denied a home to these old people in the days of their infirmity, would have shocked the conscience as a most unnatural act. We have no reason to suppose that the sons would have done otherwise than to provide the old folks with a home, as was done so long as William E. lived. The old people were there all the time. We find the widowed mother there. We will not compel them to remove. On the contrary, we adjudge that in good conscience they are entitled to a reasonable competent support out of the proceeds of that property, so long as they live. Therefore no rents should be charged during the lifetime of J. H. Bunnell. And, so long as his widow survives, her comfortable support must be a charge upon the land, to be borne equally by Charles R. Bunnell's part and Lillian Bunnell's part. Any permanent improvements made upon William E. Bunnell's portion by Charles R. or J. H. since William E. Bunnell's death should, to the extent its value has been enhanced thereby be ascertained, and set off against rents accruing since J. H. Bunnell's death. The judgment is reversed to the extent only that it is necessary to conform it to this opinion, and the cause is remanded for such necessary proceedings, not inconsistent herewith, as will carry into effect the foregoing directions.

Extended opinion by Judge O'Rear, Oct. 25, 1891.

The opinion in this case is extended in so far as it may be necessary to allow appellant, Charles R. Bunnell, a lien

upon appellee, Lillian's, part of the land for one-half of the taxes thereon paid by him since the death of J. H. Bunnell, and for the value of any permanent improvements made on the lands of W. E. Bunnell to the extent that such improvements shall have enhanced the value of the land. The court will ascertain the amount of taxes and of improvements as herein allowed, and will add thereto one-half of the sum found as representing the competent support of M. J. Bunnell, widow of J. H. Bunnell, from the death of J. H. Bunnell to the entering of the mandate herein. The court will then set off against the aggregate sum so found the reasonable rental value of Wm. E. Bunnell's land from the date of J. H. Bunnell's death till the filing of the mandate. Should there be an excess in favor of C. R. and M. J. Bunnell, it will be adjudged a lien on Lillian Bunnell's land. If the excess should be in favor of Lillian, C. R. and M. J. Bunnell will be adjudged to pay it. Lillian will be awarded the possession of her land on the filing of the mandate, subject to the liens and charges herein specified.