CASE 95.—ACTION BY THE BOWLING GREEN OPERA HOUSE COMPANY AGAINST T. H. AULL.—Dec. 10.

# Aull v. Bowling Green Opera House Co.

Appeal from Warren Circuit Court.

JOHN M. GALLOWAY, Circuit Judge.

From the judgment both parties appeal—Affirmed on plaintiff's appeal and reversed on defendant's appeal.

1. Landlord and Tenant — Rent—Holding Over—Double Rent.— Under Ky. St. 1903,section 2293, providing that where a tenant for a fixed term, or who has agreed to dispense with notice of the termination of the tenancy, refuses to deliver possession on demand at the expiration of his term, he shall be liable for double rent for the time the property is withheld, a tenant is not liable for double rent where he holds over under a renewal lease of debatable validity, which he believes to be valid.

2. Rent—Actions—Counterclaim for Disturbance of Possession.— Where a renewal lease was of debatable validity, and the landlord believed that the same was invalid, and accordingly instituted forcible detainer to recover possession of the property, the tenant was not entitled to damages as for a disturbance of his possession, and, in an action for the rent accruing during such renewal period, the tenant was not entitled to counterclaim for such damages.

3. Rent—Actions—Amount of Recovery.—Where a tenant offered a certain rental for the renewal of the lease, and held over after the expiration of his original term, it was error, in an action by the landlord to recover the reasonable rental value of the land for the renewal period, to enter judgment against

the tenant for the amount of such offer, where the reasonable rental, as prayed for in plaintiff's petition, was less than such offer.

SIMS & GRIDER and BRADBURN & BASHAM for appellant.

We contend that a landlord or his assignee in attempting to dispossess the tenant acts at his peril. If it turns out that the tenant is not entitled to possession, the landlord is protected, if otherwise then the landlord has violated his covenant with the tenant and should be required to pay to the tenant all damages that the landlord has caused him, by reason of the breach of his covenant.

W. B. GAINES, T. W. THOMAS, J. M. MOSS and R. C. P. THOMAS for appellee.

POINTS AND AUTHORITIES.

1. The name of one of five owners to a paper "submitting for your consideration" does not satisfy the statute of frauds. Differentiating the case from Winn v. Henry, 84 Ky. 48, wherein the reciting declared the purchase.

2. Delivery was necessary. (McConnell v. Brown, 16 Ky., 459; Newburger v. Adams, 92 Ky., 27; Myers v. Brown, 110 S. W., 402.)

3. The judgment that this property was forcibly detained by Aull against the Opera House Co. during the existence of the alleged contract, is conclusive against the contract. (Beattie v. Curtis, 4 Ky. Law Rep., 352; Ligon v. Triplett, 12 B. Mon., 283; Bush's heirs v. Hampton, 4 Dana, 84; Holtheide v. Smith's guardian, 84 S. W., 321.))

4. If there was a verbal agreement to rent for 3 years it was invalid. (Poole v. Johnson, 101 S. W., 955; Wessels v. Rodifer, 97 S. W., 341; Moore v. Terrell, 111 Ky., 297.)

5. The reversion having been conveyed to the Opera House Co., as an incident thereto, Aull became its tenant holding over. (Ky. Statutes, 2359; Epperson v. Blakemore, 2 Bush, 242.)

6. Rent is an incident of the reversion. (Bourne v. Bourne, 92 Ky., 211; Breeding v. Taylor, 52 Ky., 477; Cuyler v. Estes, 23 L. R., 1063.)

7. It was the duty of Aull to vacate upon notice. (Ky. Stat., 2295.)

8. Upon his failure to do so he was liable for double rent. (Section 2293; Beynroth v. Mandeville, 5 Bush, 584.)

9. Rent he would otherwise have had to pay, means reasonable rent. (Thompson v. Marsh, 2 Bush, 424.)

10. The tenant's moving upon the mandate of a court does not render the landlord liable for damages incident to such moving.

11. The prosecution of an action for possession is not such a breach of the covenant for peaceable possession as to render the landlord liable in damages. Hegan Mantel Co. v. Cook's Adm'r, 57 S. W., 929.)

OPINION OF THE COURT BY JUDGE NUNN—Reversing and Affirming.

Prior to the 25th day of September, 1905, there was pending an action in equity to settle the estate of the Potters. The court ordered a sale of the opera house and the storerooms under it, which were a part of the property, and Dr. Combs, H. D. Fitch, James Barclay, W. H. Miller, and T. L. Fitch, jointly pur- chased the property. Appellant Aull had occupied the corner room of this building for six or seven years prior to that date, under a lease from the Potters. His lease expired the 31st day of December, 1905. Appellant applied to Combs and one of the Fitches for a renewal of his lease, and they informed him that they were going to lease the room to the highest and best bidder, and, in substance, requested him to make a bid in writing, place it under seal, and present it to them on the 29th day of December. This he did, and his was the highest and best made; it being $1,262 per year. He failed in preparing his bid to state the term of years that he would take the room, at the price of his bid. Fitch took the paper to the store of appellant and called his attention to this omission, when, at the request of Fitch, he added to it these words: "This bid is for three years." Appellant and several witnesses say that, when this was done, appellant said to Fitch:

"What assurance have I that I will get the lease?"
And Fitch answered: "Yours is the highest and best
bid. I control three-fifths of the property, and I
will sign the paper." They also claim that Fitch
wrote his name on the same paper under the name
of appellant. Appellee denied that Fitch signed the
paper. The original is before us, and there is no
evidence that Fitch signed the paper, except a blur
under the name of appellant. A few days after this
occurrence, Barclay, one of the purchasers at the
commissioner's sale, sold his interest in the property
to G. T. Wilson, a druggist, who, with the other
owners, caused to be prepared articles of incorpora-
tion, and organized a corporation known as the
"Bowling Green Opera House Company," and it
leased the building referred to to George T. Wilson,
at the price of $1,000 a year, to be used as a drug
store. The original purchasers at the sale made a
written assignment of their bid, for the property, to
the appellee, and directed that the commissioner
convey to it the property. The commissioner com-
plied with this request, and appellee asked and ob-
tained from the court a writ of possession. Appel-
lant received information of this, and appeared in
court and offered to file his petition asking to be
made a party to that action, claiming that he had a
lease for a term of three years of this building, which
lease was executed by the purchasers of the property
at the decretal sale and before they assigned their
bid to appellee. The court refused to allow this
petition to be filed. Appellant appealed from that
order to this court, and the judgment was reversed.
122 Ky. 621, 92 S. W. 943. Appellant remained in
the building for the year 1906. After the 1st day of
January, 1907, appellee obtained from the county

court judge of Warren county a writ of forcible detainer against appellant Aull; but on the day set for trial the parties agreed on a judgment, to the effect that appellee was entitled to possession of the storeroom, that the writ to dispossess appellant was not to issue for 30 days thereafter, giving appellant time to move his stock of drugs, and also declared what property and fixtures in the building he was permitted to remove therefrom. It appears that appellant surrendered possession of the property to appellee on the 10th day of February, 1907. Appellee, on the 28th day of January, 1907, instituted this action against appellant to recover the rent due it. In its petition it fixed $1,250 as the reasonable rental value for the year 1906, and at the same rate to the 22d day of January, 1907, and there was due it a total of $1,319.78, for which it prayed judgment against appellant, and alleged that appellant· had wrongfully withheld the possession of the property from it, and asked a judgment for double that sum. Appellant answered denying that the reasonable rental value of the property was $1,250 a year, and alleged that it was not worth more than $600 per year. He also presented a counterclaim for something over $1,400 in damages, which he alleged he had sustained by reason of the acts of appellee in instituting, wrongfully and maliciously, illegal proceedings against him in an effort to recover the property, putting him to great expense in employing counsel in the lower court and the Court of Appeals, traveling expenses, in paying witnesses, and the loss of time from his business in defending the actions. The court sustained a demurrer to the answer in so far as it presented this counterclaim. Proof was taken by depositions, and upon the trial the court

fixed a reasonable rental value of the property for
the year 1906 at $1,262, and $140.22 for the time from
the 1st of January to the 10th of February, 1907.
From this judgment appellant appeals, and com-
plains that the court fixed the reasonable rental value
of the property at too much, and gave a judgment
against him for more than appellee asked for in its
petition, and for the further reason that the court
erred in sustaining a demurrer to his counterclaim.
Appellee obtained a cross-appeal asking a reversal
for the reason that the court erred in not giving it
judgment for double rent, or, in other words, a judg-
ment for double the sum of the judgment which was
rendered in its behalf. We will consider these ques-
tions in the reverse order.

Appellee claims that it is entitled to double rent
under the provisions of section 2293, Ky. St. 1903,
which provides that a tenant whose term expires at
a time certain, who shall refuse to deliver possession,
or a tenant who, having entered under an agreement
to dispense with notice, refuses to deliver possession
when the same is demanded, shall pay to the landlord
double the rent he would have otherwise been bound
to pay, to be computed from the time he should have
surrendered possession, recoverable in the same
manner as the original rent. As we construe this
section, it means that if a tenant, knowingly and
wrongfully, remains in the possession of property,
not believing nor having any reason to believe that
he has a right to remain in possession thereof, and re-
fuses to deliver to his landlord possession of the
property, then he may be adjudged to pay double
rent. The case before us is not of that character.
Appellant had what he had reason to believe was a
binding contract with the landlord, which permitted

him to remain in possession of the property, as tenant, for a term of three years, and such a contract as courts might differ as to the effect of, and his remaining in possession of the property, under such circumstances, ought not to place upon him the liability of paying double rent, and the court did not err in failing to charge him with it. The same may be said with reference to appellant's claim of error on the part of the court in sustaining a demurrer to his counterclaim. The contract of rent claimed by appellant was of doubtful effect, and many lawyers and judges might have concluded that it was not valid and did not give appellant the right of possession of the property, while others might have taken a contrary view. In view of these facts, appellee should not have been mulcted in damages for attempting to have the court declare the contract void—it had probable cause for believing that it had a just and meritorious claim to the possession of its property. We are of the opinion, however, that the lower court erred in fixing the reasonable rental value of the property for the time appellant occupied it. The court fixed the amount at a sum greater than appellee claimed in its petition by nearly $100. Not a witness in the case fixed the rental value at a greater sum than $1,200, and it was fixed in the petition at $1,250. Appellant's witnesses fixed the rental value from $600 to $800 After carefully considering all the testimony, we are of the opinion that $1,100 was a reasonable rental value of the property for all the time that appellant was in possession of it as the tenant of appellee It seems that the lower court, in arriving at its judgment, adopted, as the rental value, the price offered by appellant in his bid, $1,262 per year for three years. This was error.

Appellee did not base its action upon that contract. It only asked for the reasonable rental value. In addition to this, the testimony of appellant shows that his offer of $1,262 per year was made to avoid the expense and trouble of moving his stock of drugs, and by getting it for three years he avoided other removals of his stock, and, in addition to this, he had established a good trade at that point which he did not like to give up, and it was for these reasons that he had offered more than the reasonable rental value of the property.

For these reasons, the judgment on the cross-appeal is affirmed, and reversed and remanded on the original appeal, with directions to the lower court to render judgment in behalf of appellee for $1,100, with interest at 6 per cent. from the 1st day of January, 1907, and the enforcement of its lien on the property owned by appellant which was in the rented premises.

Petition for rehearing by appellee overruled.