### Pullum v. Rhea.

(Decided March 16, 1923.)

#### Appeal from Union Circuit Court.

1.  Frauds, Statute of—Equitable Rights Cannot be Relied on to Enforce Oral Contract.—Though equitable rights arising from an attempted execution of an oral contract for a three-year lease may be protected, they cannot be relied on for the purpose of enforcing the contract as orally entered into, and therefore cannot entitle the tenant to retain possession of the premises.

2.  Frauds, Statute of—Possession Under Oral Lease Cannot be Relied on to Defeat Recovery by Owner.—Possession of premises under the terms of an oral lease for three years cannot be relied on to defeat the recovery of the premises or the reasonable rental therefor by the owner.

3. Statutes—Provision of Revised Statutes Omitted from General Statutes of 1873 Held Repealed.—In view of Acts 1873, c. 1011, adopting the General Statutes, providing that the chapters thereof shall become the law of the land, and section 2 of the General Statutes, repealing all statutes of a general nature in force when those statutes took effect, and which are repugnant thereto, with certain exceptions the adoption of the General Statutes repealed the provision of Rev. Stats., 1860, c. 56, art. 1, section 4, requiring six months' notice to terminate a tenancy from year to year if the lands are outside of the city or town, which provision was omitted from the General Statutes.

4. Landlord and Tenant—Notice to Terminate Yearly Tenancy is Not Required.—Under Ky. Stats., 1922, section 2295, which contains no definition of a tenancy from year to year, but provides that a tenant under a term which was to expire on a certain day should acquire no rights by holding over if proceedings to recover possession were instituted within 90 days after the end of the term, and section 2326, providing that a tenancy at will or by sufferance may be terminated by the landlord giving one month's notice in writing, a tenant in possession under an oral lease for three years is guilty of forcible detainer where notice to quit was served on him 45 days before the expiration of one of the years, and proceedings were instituted against him within 90 days thereafter, regardless of whether his tenancy was from year to year or by sufferance.

5. Landlord and Tenant—Provision Allowing Double Rent Applies Only to Cases Strictly Within its Terms.—The provision of Ky. Stats., 1922, section 2293, charging a tenant who refuses to give possession at the expiration of the term with double rent, is highly penal, and, like all such statutes, will not be enforced unless the facts of the particular case come strictly within the purpose of the Legislature in enacting it.

6. Landlord and Tenant—Tenant Holding Possession in Good-faith Belief of Right is not Liable for Double Rent.—Where the trial court found that a tenant acted in good faith under the bona fide belief that he had the right to remain in possession, and that he had at least reasonable grounds for that belief, it was proper to refuse to allow the landlord double rent as authorized by Ky. Stats., section 2293, which applies only where the tenant remains in possession knowingly and wrongfully.

ALLEN, HARRIS & ALLEN for appellant.

G. L. DRURY and W. T. DRURY for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming on both the original and cross appeals.

Appellee and plaintiff below, Mrs. Inez B. Rhea, is the only child and heir at law of W. E. W. Rhea, deceased. The latter, in the year 1913, by verbal contract

only, rented a farm of one hundred and two acres in Union county to the appellant and defendant below, John Pullum, for the years 1914, 1915 and 1916, at an annual rental of six hundred dollars. Defendant occupied the farm for those years and paid the rent as agreed in the contract. In the fall of 1916 he entered into another verbal contract with his landlord for a renewal of the lease upon the same terms for the years 1917, 1918 and 1919. Under that renewal he occupied the premises and paid the rent for the year 1917 and began its occupancy for the year 1918 when in April of that year the landlord died intestate and the farm was inherited by his only daughter and heir, the plaintiff, Mrs. Rhea. About the time of her father's death, she, according to her testimony, notified defendant that he could not occupy the farm for the following year 1919 without paying an increased rent, but there is some dispute in the testimony about that notification. However, on November 14 of that year she served written notice on defendant demanding of him the surrender of the possession of the farm to her on or before January 1, 1919, which he declined to do, and on the 8th of that month plaintiff instituted forcible detainer proceedings against him which were tried in the country and a verdict of "not guilty" was returned upon which judgment was duly rendered. A traverse was prosecuted to the circuit court and the cause was there continued from time to time till November 11, 1920, when it was heard before the court without a jury and plaintiff was adjudged guilty of the forcible detainer, but in the meantime he had occupied the land for the year 1919 and had vacated it by January 1, 1920. After the latter date and before the trial in the circuit court plaintiff filed an ordinary action against him in which she alleged that a reasonable rental for the place during the year 1919 was fifteen hundred dollars, and she prayed judgment against defendant for double that amount, insisting that she was entitled thereto under the provisions of section 2293 of our present Kentucky Statutes. The answer to that petition denied the unlawful or wrongful detainer and pleaded the unreversed judgment in the forcible detainer proceedings in bar thereto. By an amended answer defendant pleaded matter in estoppel which consisted in the sowing of a crop of wheat on the land in the fall of 1918, and before he received notice to surrender possession. By another amended answer he pleaded that he occupied the

farm during the year 1919 under the honest and good faith belief that he was entitled thereto under his tenancy contract and that he had submitted all the facts relating thereto to a reputable practicing attorney who informed him that he was entitled to occupy the place for that year and he pleaded such facts in defense of plaintiff's right to collect double rent under the provisions of the statute.

. Appropriate pleadings made the issues and the causes were consolidated, the court trying the forcible detainer proceedings, as hereinbefore stated, but the issue as to the reasonable rent for the year 1919 was submitted to a jury and it returned a verdict, under the instructions of the court, in favor of plaintiff for the sum of thirteen hundred dollars; whereupon, plaintiff moved the court for a judgment in her favor for the sum of twenty-six hundred dollars, but that motion was overruled and a judgment was rendered for the amount of the verdict. Defendant's motion for a new trial was overruled and he prosecutes this appeal and plaintiff has moved for and obtained a cross appeal complaining of the action of the court in declining to render judgment in her favor for double the amount of the verdict.

It is first insisted by learned counsel for defendant that although the lease contract under which defendant claims the right of occupancy was one which the statute of frauds required to be in writing and signed by the party to be charged, yet the statute only provides that "No action shall be brought to charge any person" on any of the contracts therein required to be in writing, and that there is no effort in this case to charge any one on the contract involved, and they, therefore, cite the cases from this court of Weber v. Weber, 25 Ky. L. R. 908; Dean v. Cassidy, 88 Ky. 572, and Beckett Oil Co. v. Becker, 165 Ky. 818, holding that acts done in the execution of a verbal contract which the statute requires to be in writing are not void and that the defendant may rely on such verbal contract in justification of his entry upon the premises so as to relieve him of the charge of trespassing thereon; and, further, that equitable rights may arise from such attempted execution of the contract but which are not necessary for us to state in this opinion. It will be observed in those opinions that none of the equitable rights growing out of such circumstances may be relied on if the purpose is to *enforce* the contract as verbally entered into. When the latter is attempted

it is a plain effort to enforce the contract and to charge the other party thereto with its obligations as entered into, which is exactly what defendant is trying to do in this case. Hence, in the Cassidy case, *supra*, it was said: "It is elementary in the law of contracts that the right to enforcements must be mutual and belong to both parties. Mere possession under a parol agreement as to land, and which is within the statute, will not enable the party in possession to defeat a recovery by the owner. The holder can only insist upon any equities growing out of the transaction. The contract will be disregarded at the instance of either party upon equitable principles." The "equitable principles" and "any equities growing out of the transaction" are the rights which the cases relied on by counsel acknowledge and enforce; but the inserted excerpt expressly holds that neither party may rely on the terms of the verbal contract nor can the party in possession "defeat a recovery by the owner" upon any such reliance. To the same effect are the cases of J. W. Reccius & Brother v. Columbia Finance and Trust Co., 120 Ky. 478; Wessells v. Rodifer, 30 Ky. L. R. 51; Gault v. Carpenter, 187 Ky. 25, and Cracraft v. McDaniel, 196 Ky. 128, as well as a number of others from this court, some of which are cited and referred to in the cases *supra*. They also hold that an estoppel will not arise out of a part performance of the contract, and in the Gault case the prior one of Jones v. Commonwealth, 31 Ky. L. R. 48, 104 S. W. 782, was expressly overruled in so far as it held that the sowing of a crop of wheat in part performance of the contract would estop the landlord from ousting the tenant during the succeeding year, which was but adhering to our rule that, "the doctrine that part performance of an oral contract takes it out of the statute of frauds does not prevail in Kentucky." Rinehart v. Kelly, 145 Ky. 470.

It is next insisted, and which is the chief point relied on for a reversal of the judgment, that defendant was a tenant of the premises "from year to year" and that he was entitled to six months' notice to surrender it. That insistence is bottomed on chapter 56, section IV of article 1 of the second volume of the Revised Statutes of Kentucky by Stanton, 1860, which subsection says: "Either party may terminate a tenancy from year to year, by giving notice, in writing, of his intention to terminate the same, of not less than three months before the end of the year if for lands in a city or town, and six months

if elsewhere." If that statute was still in force by its express terms it applies only to a tenancy "from year to year" and the first question to arise would be whether the occupancy of defendant in this case was one under such a tenancy. Were it necessary for the determination of this case to judicially define the precise tenancy covered by those words we could cite authorities to the effect that it applies only to an occupancy with no definite termination and in which an annual, monthly or a periodical rent was reserved as long as the occupancy continued, but as to which no definite period was fixed in the contract, or at the time of the original entry upon the premises. Its common law definition did not include leases that by their terms had a fixed termination as did the lease in this case, the termination whereof was at the end of the year 1919. On the contrary the writers on the subject, as well as the adjudged cases, seem to hold that an occupancy under a contract containing a fixed termination of the lease, but which is not enforcible because against the statute of frauds, is one *at sufferance,* or *at will* which may be terminated at any time at the pleasure of either party by their complying with the requirements of the local law with respect thereto, if any on the subject, since by the terms of the statute it is not obligatory on either and neither of them may be subjected to any action seeking to charge them thereon; and such was the holding of this court in the Wessells case, *supra,* where the occupancy was under a contract not in writing as required by the statute of frauds. We say that if it was essential to the determination of this case to demonstrate the correctness of the above statement by reference to the adjudged law we feel that it would be no difficult task, but since we have determined that it is not necessary in this case we will not attempt to do so, and do not, therefore, attempt an exact definition of that class of tenancies.

The relied on section from the Revised Statutes, *supra,* was omitted from the first and all succeeding editions of the general statutes compiled by Bullock, Nesbitt and Craddock, in 1873, and in the same year the legislature by the enactment of chapter 1011 (page 53, vol. 1, Acts 1873), entitled 'An act to adopt the General Statutes,'' provided that the chapters thereof from one to the last one, inclusive, "shall become the law of the land, to take effect on the first day of December, 1873, except such parts thereof as to which a definite pro-

vision is expressly made therein," and (section 2), "That all statutes of a general nature in force when the General Statutes take effect, and which are repugnant thereto, are hereby repealed, except as follows," etc. Then follows the exclusion of named classes of local statutes, and those of the Commonwealth of Virginia relating to the appropriations of land in this Commonwealth and some others not pertinent to the question now involved.

On October 13, 1874, the opinion in the case of Broaddus v. Broaddus, 10 Bush 299, was handed down by this court, and there was involved in it the question as to the effect of the adoption of the General Statutes upon all statutes of general application contained in the Revised Statutes and which had been omitted from the General Statutes as adopted by the act of 1873. The special point involved in that case was whether certain provisions of the Revised Statutes with reference to appeals to this court in will contest cases were repealed by the adoption of the General Statutes, which latter did not contain the particular provision of the Revised Statutes. In holding that the adoption of the General Statutes with such provisions omitted therefrom had the effect of repealing them the court in that case said:

"When a section in the Revised Statutes has been omitted in the General Statutes, or any change made, however slight, in a general law, the whole law as found in the Revised Statutes on that subject must be considered and treated as repugnant to the provisions of the General Statutes, as in construing one section of a general law the object and intention of the whole law must be considered. It never was contemplated by the revisers, or by the legislature in adopting these statutes, that both the old and new statutes should be considered together in determining what the law is.

"The General Statutes must be regarded as containing a complete system of laws, and in so far as they treat of any general law, whether under the title of 'Wills,' 'Executors and Administrators,' 'Husband and Wife,' 'Guardian and Ward,' etc., it must be considered and treated as all the statute law on the subject indicated by the title; and if the system is defective in any of its parts, the remedy is to be found in legislative amendments."

The doctrine therein announced has been followed in a number of succeeding cases, as will be seen in vol.

1 of Caldwell's Notes to Kentucky Reports. page 158, some of which are: Bunnell v. Bunnell, 111 Ky. 566; Joyes v. Jefferson County Fiscal Court, 106 Ky. 615; Herndon v. Farmer, 114 Ky. 200, and Pettit v. Yewell, 113 Ky. 777. The case of O'Mahoney v. Bullock, 97 Ky. 774, recognizes the doctrine and announces nothing contrary thereto but holds that it does not apply as between the General Statutes and the present. Kentucky Statutes, since at that time there was no act adopting the latter statutes, although there was subsequently enacted an act adopting the 1903 edition of the latter statutes and which is section 2290b of the 1909 edition of Carroll's Kentucky Statutes; but it expressly provided "that this act shall not be construed to render valid any invalid chapter or section or part thereof embraced in said statutes, or to amend, modify or repeal any law or part thereof now in force or effect and not included in said (Ky.) Statutes." So that whatever may be the effect of the adopting act of the Kentucky Statutes on prior provisions contained in the General Statutes, under the doctrine of the Broaddus and subsequent cases the latter statutes had the effect to repeal general provisions in the Revised Statutes which were omitted from the General Statutes. It, therefore, necessarily follows that section IV of article 1 of chapter 56 of the Revised Statutes, *supra,* upon which defendant relies, was repealed by the adoption of the General Statutes. In the first edition of that publication there was for the first time enacted article IV, chapter 66, page 608 therein, and it was carried forward in subsequent editions of the General Statutes and is the same as the present section 2295 of the 1922 Carroll's edition of the Kentucky Statutes. So that, although there may be now in existence no statutory definition of what is a tenancy "from year to year" the General Statutes made provisions by which all classes of tenancies, including that class, might be terminated, and the question, therefore, is one more as to how a tenancy, whatever may be its nature, may be terminated than one of a proper classification of it. In the same first edition of the General Statutes it was provided in the first section of article VI of chapter 66, edition of 1873, that "A tenancy at will or by sufferance may be terminated by the landlord giving one month's notice, in writing, to the tenant requiring him to remove," which section was carried forward in subsequent editions of that publication and is the same as section 2326 of the

present Kentucky Statutes, and it is the only statute
now in existence requiring notice in order to terminate
any character of tenancy, and that condition of the law
has existed continuously since the adoption of the first
edition of the General Statutes. The earlier cases from
this court cited and relied on by defendant's counsel, the
principal one of which is Morehead v. Watkins, 5 B. Mon.
228, are not, therefore, applicable.

If we should construe the occupancy of defendant in
this case as being one *at sufferance,* or *at will,* then he
was not entitled to but thirty days' notice to remove.
On the other hand, if we should class his tenancy as
coming within the provisions of section 2295, then no
notice to him to remove was required of the landlord,
since in that case the latter could remove him by pro-
ceedings instituted for the purpose at any time within
ninety days after the expiration of the current year of
occupancy. Forty-five days' notice was given in this
case and the forcible detainer proceeding, which was
begun before the expiration of the ninety days was,
therefore, maintainable. Hence, the court did not err in
adjudging defendant guilty of the forcible detainer.

On the cross appeal it is strenuously insisted and
not without reason and plausibility that plaintiff was
entitled to collect double rent under the statute, *supra,*
the provisions of which, as will be observed, are highly
penal, but with which the courts have no concern as long
as the provisions do not invade any constitutional in-
hibition. It does not do so in this case, and it is the duty
of the courts to enforce it in all cases strictly coming
within its provisions. However, like all highly penal
statutes, they will not be enforced unless the facts of the
particular case in which they are invoked come strictly
within the purpose of the legislature in enacting them.

The case of Jones v. Taylor, 136 Ky. 39, is the sec-
ond appeal of the case of Jones v. Commonwealth,
*supra,* and is one the facts of which are very similar to
those found in this case. The double rent provision of
the statute was there sought to be enforced. It was
therein pointed out that our statute on the subject was
copied after an English statute of George II, which,
however, gave double rent only when the tenant "will-
fully held over." The English courts, as shown in that
opinion, declined to apply the provisions of the statute
where the tenant acted *bona fide* and in good faith be-
lieved that he was entitled to occupy, and where it did

not appear that he intentionally desired to wrong the landlord or to invade his rights. Following those English cases, it was said by this court in the case of Aull v. Bowling Green Opera House Co., 130 Ky. 789, and approved in the Jones-Taylor case, *supra*, that: "As we construe this section, it means that if a tenant, knowingly and wrongfully, remains in the possession of property, not believing nor having any reason to believe that he has a right to remain in possession thereof, and refuses to deliver to his landlord possession of the property, then he may be adjudged to pay double rent. The case before us in not of that character. Appellant had what he had reason to believe was a binding contract with the landlord, which permitted him to remain in possession of the property, as tenant, for a term of three years, and such a contract as courts might differ as to the effect of, and his remaining in possession of the property, under such circumstances, ought not to place upon him the liability of paying double rent, and the court did not err in failing to charge him with it." After approving that statement, the opinion in the Jones Taylor case said that "The statute was enacted for the purpose of preventing a tenant, to the prejudice and loss of the landlord, from wrongfully withholding the property without having any good faith cause to believe he could rightfully do so." The opinion then proceeds to say that his belief must be an honest one and based on reasonable facts and circumstances, and it will not be sufficient to relieve him of the penalty of paying double rent if he merely states only "that he believed he had a right to hold the premises;" that in order for him to be relieved therefrom "he must furnish reasons sufficient to induce a jury or court hearing the case to believe that he in good faith, based upon reasonable grounds, believed he had a right to remain in possession;" and further said, "and it is admissible for him to show that he laid his case before a competent attorney, and was advised that he had a contract right to remain in possession of the premises." It was held in that case that in order to make the latter testimony competent the tenant must place before the consulted attorney all the facts in his possession relating to the case. It will thus be seen that the defense against double rent of the advice of counsel is by that opinion made somewhat analogous to the same defense in civil actions for malicious prosecution, but it is not stated in the Jones case that

such advice, when properly obtained, would itself alone constitute a defense as is true in actions for malicious prosecutions, and we adjudge that question neither the one way nor the other in this case. The facts were before the learned judge who presided at the trial and he determined therefrom that defendant herein acted in good faith under the *bona fide* belief that he had the right to remain in possession, and that he had at least reasonable grounds for that belief, and for that reason declined to adjudge double rent.

Learned counsel for plaintiff vigorously attack the soundness of the rule announced by the Aull and the Jones cases, and, as we have hereinbefore intimated, not without reason and plausibility, but feeling ourselves bound by those cases, and not being convinced of their unsoundness to such an extent as would authorize our overruling them, we have reached the conclusion that the court did not err under the facts of this case in declining to adjudge double rent against defendant.

Wherefore, the judgment is affirmed both on the original and cross appeals.