CASE 86—PETITIONS EQUITY—FEBRUARY 6.

# Brook's Assignee v. Summers.
# Summers v. Brook's Assignee.
# Knight v. Bate's Adm'r, &c.

APPEAL FROM BULLITT CIRCUIT COURT.

1. DOWER—ASSIGNED ESTATE—CONTRACT—DEATH OF WIFE PENDING SUIT FOR SALE.—In a suit by the assignee of an assigned estate to settle the estate and to sell lands belonging to it, where the wife of the assignor files her answer consenting to a sale of the lands free from her potential right of dower, and agreeing to take the value of same in money, and the court in a judgment orders the land to be so sold, but reserves the question of fixing the amount of dower for future adjudication, and afterwards refers the question as to the value of her dower right to a commissioner, with directions to report to the court his conclusions, and the commissioner, at a subsequent term, files his report, and the day after it was filed and before it was acted upon by the court, the wife died, there was a contract of record which inured to the benefit of the wife's estate after her death.

2. SALES—INFANT'S REAL ESTATE—CURTESY—ESTOPPEL.—Upon the sale of the lands of a deceased wife by order of court, upon the application of the husband, who was statutory guardian of the children, the petition alleging that the infants, "in conjunction with their said guardian," were the owners of the land, the husband's estate by the curtesy passed to the purchaser, and he is estopped from setting up any claim thereto.

3. ADVANCEMENT TO CHILD IS SATISFACTION OF DEBT.—An advancement by a parent to a child operates to satisfy a debt due the child, if the advancement be in amount equal to or greater than the debt.

FAIRLEIGH & STRAUS FOR BROOKS' ASSIGNEE.

1. The filing of the answer of Mrs. Brooks, and the judgment entered thereafter for the sale of the lands, free from her potential right of dower, constituted a contract of record between her and the creditors of her husband, to the effect that they would sell the land free of her said right and pay her the value thereof in money, and whatever the value of it was, passed to her estate.

The fact that she died before the value of her dower right was fixed by the court, did not destroy her right.

2. The advancement by Brooks to his daughter must be considered as a payment of any balance that was due her. (Pomeroy's Equity Jurisprudence, sec. 540; Plunkett v. Lewis, Eng. Chan. Reps., 3 Herr.)

J. F. COMBS FOR SUMMERS AND KNIGHT.

1. The guardian, Brooks, had no interest in the purchase money derived from the sale of the infants' real estate. He was not a party to the suit in which it was adjudged to be sold, or a party to the deed by which it was conveyed, and his right of curtesy was not sóld. He should, therefore, account for interest on the sum realized by the sale.

2. The sale of the land was made ostensibly for the interest of the infants, and to permit him to use the fund arising from the sale without paying interest thereon, would be to permit him to take advantage in his fiduciary capacity of the infants, and speculate on their interests, which is never allowed. (Lee, &c., v. Fox, 6 Dana, 176; Richardson v. Spencer, 18 B. M., 366; Bispam's Equity, sec. 143; Perry on Trusts, sec. 402.)

3. The recitals of the deed, even if they could be construed into an acknowledgement of payment in full for the sum due, are not binding, because there had been no full disclosure by the guardian of the value of the funds held by him. (Story's Equity, 12 ed., sec. 321; Richardson's Adm'r v. Spencer, 18 B. M., 365.)

4. To apply the doctrine in this case that the advancement was a satisfaction of the debt due the daughter, would be to allow a parent to plead an advancement as a set-off against a debt due his ward.

5. Mrs. Brooks could have had no more interest in the proceeds of the sale of the land than she had in the land itself. The dower right is a mere possibility, which may or may not become a reality, and if either of the events happen by which the right is terminated, it can not pass to any one, and no longer attaches to the land or its proceeds.

JUDGE DuRELLE DELIVERED THE OPINION OF THE COURT.

Upon this record three appeals are presented for consideration. W. B. M. Brooks made an assignment to W. T. Morrow for the benefit of his creditors in October, 1892. In November, 1892, the assignee brought

suit for the settlement of his trust, praying instructions by the court, for a sale of the lands owned by his assignor and for an adjudication as to the priorities of the creditors. Brooks, the assignor, and his wife, Bettie C. Brooks, were made parties defendant to this suit, and the petition prayed that the value of the dower should be fixed in money and the homestead assigned, in order that the lands might be sold free of lien, dower and homestead. To this petition Bettie C. Brooks filed an answer consenting to the sale of all the land mentioned in the petition free from her potential right of dower, and agreeing to take the value of her said right of dower in said lands to be determined by the life-tables, and prayed that that value be ascertained. This answer was acknowledged before the clerk, after a separate examination of defendant, Bettie C. Brooks.

At the November term, 1892, the case was submitted for the advice of the chancellor and a judgment rendered directing a sale of the lands belonging to the assignor. In that judgment it was provided as follows: "All questions as to the value of the defendant, Bettie C. Brooks' potential right of dower and the priorities of the lien-holders in the funds arising from the sale of said lands, are reserved for further judgment of this court."

At the September term, 1893, the commissioner was, by an order of court, directed to take proof as to the age and condition of health of W. B. M. Brooks and his wife, Bettie C. Brooks, and report upon the value

of the potential right of dower of Bettie C. Brooks. At the December term, 1893, the report was filed, showing the commissioner's estimate of the value of Mrs. Brook's potential right of dower. Mrs. Brooks died the day after the report was filed.

In March, 1894, the administrator of Mrs. Brooks filed an answer claiming the value of the potential right of dower, praying the court to fix the same, and for its recovery by him as her administrator. It is claimed on behalf of one of the creditors that the death of the wife before any judgment fixing the value of her potential right of dower defeated her claim and that of her estate to be compensated for its value. In other words, the claim is that it was a mere possibility, and no right could pass to her estate until after a judgment establishing the right and fixing the value of dower, had been entered. We are unable to agree with this contention. In our view, the prayer of the petition for sale free of dower, the consent of Mrs. Brooks to accept the value of her right of dower in money, followed by a judgment of sale and an order directing the value in money of her potential right of dower to be ascertained, constituted a contract of record which inured to the benefit of her estate after her death. Had she lived, she would have been estopped from claiming dower in any of the lands sold, and therefore, she parted with something of value as a consideration for the record contract which was thus entered into. The title obtained by the purchaser was free from her right of dower, and the purchase price

was necessarily enchanced by that fact. When this was done her right to receive the value, to be thereafter ascertained, out of the proceeds, became fixed and determined and passed to her legal representative.

The questions raised upon the two other appeals will next be considered. By his first wife Brooks had three daughters. Upon her death he was entitled to the possession, as tenant by curtesy, of certain land owned by her. In 1868, a suit was instituted in the Bullitt Circuit Court by Brooks, as statutory guardian, praying a sale of the land, upon the ground that a sale thereof would redound to the benefit of the infants. It is stated in the petition that the infants, "in conjunction with their said guardian," are the owners of the land. Commissioners were appointed to report the value of the infants' real and personal estate, the annual profits thereof, and whether their interests required a sale to be made. Judgment was rendered for a sale of the land, and bond was executed by Brooks in accordance with the 86th chapter of the Revised Statutes. A sale was had, the purchase price being $5,511.82, and the purchase money was duly paid over to Brooks. One of his daughters died in infancy, her share passing to her sisters. One of the surviving daughters, Anna M. Brooks, married the defendant, Wilson Summers.

In March, 1884, Brooks and wife sold and conveyed to Summers a hundred acres of land at $30 per acre, and by the same deed conveyed to Anna M. Summers 98 acres of land adjoining the hundred-acre tract, the

consideration for the 98 acres being recited as follows: "The twenty-eight hundred and thirty dollars mentioned as the consideration of the said ninety-eight acres is paid in this way, to-wit: Eighteen hundred and thirty dollars of same was due from said W. B. M. Brooks to the said Annie May Summers on account of money realized by him out of the sale of a certain tract of land which the said Annie May and her sister inherited from their deceased mother, Mary Jane Brooks (whose maiden name was Mary Jane Pendleton).

"Said land was sold by the said W. B. M. Brooks, as guardian of the said Annie May, under and by virtue of a decree of the Bullitt Circuit Court, rendered in the suit of W. B. M. Brooks, Gdn., on petition for sale of land, No. 331, and one thousand dollars, the balance of the twenty-eight hundred and thirty dollars hereby given to the said Annie May Summers as an advancement, for which she is to account in the final settlement of the estate of the said W. B. M. Brooks."

Mrs. Summers appears, by the testimony, to have been between twenty-five and thirty years of age, at the date of the execution of this deed. The deed was duly accepted, and the $3,000 stipulated as the price of the hundred acres was paid by Summers. Mrs. Summers and her husband, in their original pleadings in this suit, admitted that Brooks was entitled to a life estate in the proceeds of the sale of the land, as tenant by curtesy. In a subsequent pleading this admission was specifically retracted, and the claim, as

made finally by the pleadings and in the briefs, is that she was entitled to $2,755.91, as heir of her mother and sister, out of the proceeds of the sale; and it was claimed in the pleadings that she was entitled to interest thereon. The trial court gave judgment in her favor for $925, subject to the value of the life estate of her father, W. B. M. Brooks.

It is contended also that Mr. Brooks' estate by the curtesy was not sold by the judgment and did not pass to the purchaser under the sale, and that therefore he should be required to look to the property sold for his curtesy, and has no interest whatever in the proceeds of sale; but Mr. Brooks in that suit correctly described himself and the infant daughters as the owners of the land in question. Having so described himself in the petition, he would undoubtedly after the sale be estopped from setting up any claim as tenant by the curtesy.

Much stress is laid by counsel for Mrs. Summer upon the phraseology used in the deed and in Mr. Brooks' deposition, viz., the recital in the deed that the money "was due" from Brooks to Mrs. Summers, and the statement in the deposition, that it was what he "owed her," as showing that he had waived his estate by curtesy. But we are of opinion that these recitals did not estop him from claiming his life estate by the curtesy up to that date in the sum of money which he then described as due, even if the language used was intended to amount to anything more than a mere expression of the fact that so much money was to come to Mrs. Summers from him.

Upon the other hand, it is claimed by counsel for the assignee that the acceptance of the deed, with full knowledge of its recitals, and the retention of the land by Summers and wife without protest, indicate that the value of Brooks' life interest had been deducted from the amount which he paid over to Mrs. Summers by the conveyance of the land. In this contention we are inclined to agree. It is true, however, that it is not definitely shown that at the time of the conveyance Mr. Brooks made any full statement of the amount received by him from the sale of the land which descended from his wife, and it is claimed with much earnestness that that fact prevents Summers and wife being estopped by their acceptance of the deed. But in the same deed was made an advancement of a thousand dollars, and from the testimony there can be no doubt that the intention of the grantor, Brooks, was to fully pay his daughter the share which would ultimately come to her out of the estate of her mother and to give her the surplus, whatever it might be, by way of an advancement to be accounted for out of her share in his estate. Such being the manifest intention of the grantor, we can not hesitate in the conclusion that the advancement operated to cancel the remainder of his indebtedness to his daughter, even if that indebtedness was not adjusted and settled by agreement carried out by the execution of the deed.

The weight of authority seems to be clear that an advancement to a child operates to satisfy a debt due the child if the advancement be in amount equal to

or greater than the debt. The rule as to advancements appears to be directly opposite, in this respect, to that followed in the case of legacies, though the reason for the difference, as said by Mr. Pomeroy, "is certainly difficult to perceive." (Pomeroy's Equity Jurisprudence, section 540.—See also 1 A. & E. Enc., 2d Edition, page 771, and Kelly v. Kelly's Exrs., 18 Am. Decisions, 710).

For the reasons given the judgment is reversed upon the appeal of Morrow v. Summers, and affirmed upon appeals of Anna M. Summers v. Morrow, Assignee, and Knight v. Bates' Admr.