## In re UNION FEATHER & WOOL MFG. CO.

(Circuit Court of Appeals, Seventh Circuit. January 7, 1902.)

### No. 802.

ACTS OF BANKRUPTCY—PREFERRING CREDITOR WHILE INSOLVENT.

A corporation issued checks to its president for present small advances of money made by him to meet necessary expenditures at times when the company was short of funds, which checks he held until the company had funds in the bank, and they were then presented and paid. *Held*, that such payments were not preferences which constituted acts

of bankruptcy on the part of the corporation, even conceding that it was insolvent at the time, and, its insolvency being doubtful, at least, upon the evidence, that the court properly refused to adjudge it a bankrupt, upon a petition filed by another officer as the principal creditor, the validity of whose claim was also doubtful and disputed.

Appeal from the District Court of the United States for the Northern District of Illinois.

Peter Peterson, claiming to be a creditor of the Union Feather & Wool Manufacturing Company, for brevity called the "Company," for services as secretary and treasurer of the company, to the amount of $1,615.30, Frederick W. Alwart, a creditor of the company for goods sold to the amount of $580.40, and the Star Oil Company, a creditor of the alleged bankrupt for goods sold to the amount of $16.58, on January 28, 1901, filed their petition in the bankruptcy court, which, as subsequently amended, charged that the company was insolvent, and that within four months next preceding the date of the filing of the petition the company committed acts of bankruptcy, in that it paid to one Samuel L. Goldman, a creditor, January 15, 1901, $36; January 16th, $44.93 and $76.85; January 25th, $74.50; amounting in the aggregate to $232.28,—with intent to prefer such creditor over his other creditors, the company being at the time of each such payment insolvent. Issue was joined denying insolvency, the alleged preferences, and that Peterson was a creditor of the company. The court below decreed upon the testimony taken that "the facts set forth have not been proved, but the petitioning creditors had reasonable gr unds for the filing of the petition herein, and it is therefore adjudged that said Union Feather & Wool Manufacturing Company was not a bankrupt, and that said petition be dismissed, with costs;" from which decree this appeal is taken. The facts, so far as they are necessary to be stated, appear in the opinion.

Charles E. Selleck and Lloyd C. Whitman, for appellant.

Henry R. Platt, for appellee.

Before JENKINS and GROSSCUP, Circuit Judges, and BUNN, District Judge.

JENKINS, Circuit Judge. The questions upon which our decision must turn are purely questions of fact. A discussion of them at length can prove of no value to the profession. We need but to state, and that briefly, our conclusions.

For some years prior to November 5, 1898, the petitioner Peterson was a manufacturer of fillings for mattresses, doing business for a few years prior to that date under the name of the Chicago Cotton Mill Company, a corporation, the stock of which was owned practically by himself and his wife, and one of them owned the lot and the building upon and in which the business was conducted. In 1898 negotiations were instituted between Peterson and Samuel L. Goldman, which resulted in the incorporation of the alleged bankrupt, with a capital stock of $10,000, one-half of which was issued to Peterson and his wife, and one-half to Goldman and his wife. Peterson and his wife conveyed the lot and building to this new company at a valuation of $7,000, subject to a mortgage of $2,000, and received $5,000 of stock in the new company. Goldman purchased of the old company its machinery, paying therefor $1,500 in cash, which was used to discharge its debts, and paid $3,000 in cash to the new company, which was deposited in the bank to its credit. For this $4,500, so paid, he and his wife received $5,000 of stock in the new company.

The board of directors, consisting of the two men and their wives, either legally or illegally,—it is immaterial to our conclusion which,—elected Goldman president and Peterson secretary and treasurer, and fixed their salaries as such officers at $150 each per month. Neither of them drew this amount, however, nor was the amount ever credited to either upon the books of the company. From the start they drew $25 each per week, and in June, 1900, the amount so drawn was reduced to $15 a week. It is claimed by Goldman that it was agreed that the salaries should be reduced to the amount which they thus drew, and he repudiates any claim whatever upon the company by reason of salary. Peterson, on the contrary, claims that there was no reduction; that the arrangement was merely temporary, and the smaller sums were paid on account. Much testimony was adduced pro and con with respect to the value of the assets of the company, the witnesses for Peterson placing the land and buildings, which two years before he put in at $7,000, as worth $2,500; the company's witnesses placing the value from $4,000 to $4,900. There was like variance in the testimony of the value of the machinery and of the outstanding accounts. It was also claimed that Peterson had collected large amounts of money for the company which he had appropriated, and with which he had not charged himself upon the books. To a certain extent this seems to be conceded; but it is claimed that the omission to charge himself with them was merely negligent omission, and not fraudulent.

To prove the company insolvent, within the meaning of the bankruptcy act, it is essential, even upon the estimate of values asserted by the petitioners, that Goldman be shown to be a creditor of the company for unpaid salary to the amount of $1,717.10. It is conceded that if he be not counted as a creditor the company was not insolvent. And just here occurs a remarkable incident. Peterson insists that Goldman is a creditor to the amount stated. Goldman swears he is not, and that he has no claim upon the company by reason of salary. It is not often that one sees another imposed upon in this way; it is not often that one is made a creditor against his will; it is not often that one repudiates monetary favors. To say the least, it is doubtful, under the testimony, if Peterson has any claim against the company for salary. The evidence is strong to show that he and Goldman, in consideration of the unprofitable business of the company, agreed to reduce their compensation to the amount which they drew weekly, looking to the future, if the business should be profitable, to receive returns in dividends. At all events, Goldman upon oath declares the fact so to be. He certainly is precluded from asserting any claim against the company founded upon the resolution which he here asserts to be illegal, and especially in view of his declaration upon oath that he has no claim against the company for such salary.

Nor do we think the payments to Goldman were preferences, within the meaning of the bankruptcy law. The company in the autumn of 1900, not being insolvent, was in need of ready money to pay its workmen their weekly wages. Goldman came to the assistance of the company, advancing to Peterson the necessary money to

meet the pay roll on Saturday night, taking checks for the amounts advanced, which he presented when the company was in funds, and which were then paid to him by the bank. This course of business continued at intervals for some little time. It was rendered necessary by the circumstances, to keep the company a going concern. They were present advances of money upon the checks of the company. Subsequent to the cashing of these checks, Goldman advanced other moneys in January, 1901, receiving the check of the company which he now holds. The total depletion of the treasury of the company by the cashing of checks given for advancement of wages is only $92.43. It is clear that there was no intent to prefer Goldman. The company and Peterson relied upon him when they were short of ready money to help the company out by advances of money, and he stood ready up to the date of the filing of this petition to advance further moneys. He testifies that he never heard a suggestion of the insolvency of the company until this petition was filed by Peterson. The petition, Goldman asserts, was filed because he had taken the books for examination with respect to moneys which Peterson had collected with which he had not charged himself.

The case requires no further consideration at our hands. The only possible error discoverable in the decree is that "the petitioning creditors had reasonable grounds for the filing of the petition," and of that the petitioners cannot complain.

The decree is affirmed.